UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELIZABETH DANIALS-KIRISITS,

                          Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                        05-CV-800S

NEW YORK STATE OFFICE OF COURT
ADMINISTRATION,

                          Defendant.


## I.  INTRODUCTION

        Plaintiff Elizabeth Danials-Kirisits commenced this action in November 2005 alleging

violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. and New

York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq*. by her employer,

Defendant New York State Office of Court Administration.  Presently before the Court is

Defendant's Motion for Summary Judgment dismissing the Second Amended Complaint.

For the reasons discussed below, this Court finds the matter fully briefed and oral

argument unnecessary, and concludes that Defendant's motion should be granted.

## II.  BACKGROUND

        Plaintiff was employed by Defendant in Buffalo City Court from approximately 1977

until her termination in December 2005. (Decl. of Plaintiff Elizabeth Danials-Kirisits ¶¶ 18,

124, Docket No. 117; Decl. of Marie Villari ¶¶ 4-5, Docket No. 99.)  Following her

complaints to Defendant's gender bias committee and the New York State Division of

Human Rights, Plaintiff was interviewed in 1990 by the New York State Commission on

1

Judicial Conduct regarding sexual harassment by then-Judge Anthony LoRusso. (Pl's Decl. ¶¶ 22-25.)   After LoRusso was formally removed from his position in 1992, Plaintiff commenced an action in this Court alleging discrimination on the basis of sex and retaliatory treatment by Defendant and former Judge LoRusso. (Id. ¶¶ 27-30.) That action was settled in 1997. (Id. ¶ 31.)  In the present action, Plaintiff alleges, among other things, that the discriminatory and retaliatory treatment continued after the settlement of the district court action.(Id. ¶ 32.)

Among Plaintiff's allegations are assertions that she was twice passed over for promotion to Deputy Chief Clerk, once in 1999 and again in 2003, in retaliation for her complaints against LoRusso. (Id. ¶¶ 36-44; 58-65.) The first person who was promoted over Plaintiff in 1999 was a woman who had also testified against LoRusso in 1990. (Id. ¶¶ 25-26, 44; Pl's Dep at 80-81, Docket No. 116-2.) Further, the Chief Clerk in both 1999 and 2003 also testified against LoRusso. (Pl's Decl. ¶¶ 26, 38-43; Decl. of Sharon Thomas ¶¶ 2-4, 53-54, Docket No. 108.)  Plaintiff nonetheless alleges that Kim Delmont, who was promoted to Deputy Chief Clerk over her in 2003, "engaged in a campaign to isolate, ostracize, undermine, discredit, and ultimately discharge [Plaintiff] from employment, because of [her] complaints of and opposition to ongoing and continued harassment, discrimination and retaliation by [Defendant], and retaliation for [her] complaints against former Judge LoRusso." (Pl's Decl. ¶¶ 59-66.)   It is Plaintiff's belief that Delmont is a protégé of a close friend of Judge LoRusso.  (Id. ¶ 64.)

Plaintiff alleges that, in February 2005, "Delmont created false documentation of unfounded allegations of poor performance by me over an eighteen month period, which she then used to prepare and present at a performance evaluation." (Pl's Decl. ¶ 94.)  The

parties agree that this is the only negative evaluation Plaintiff received in the years following the LoRusso complaint, and that Plaintiff has received satisfactory evaluations since her first formal evaluation in January 1994. (Pl's Decl. ¶ 99; Villari Decl. ¶¶ 6-16.) What is in dispute is Plaintiff's reaction to this February 2005 evaluation.  Defendant asserts that Plaintiff  was interruptive during the evaluation meeting and abruptly left prior to its conclusion, only to be later witnessed using excessive profanity and otherwise acting inappropriately in public areas of the court.  (Decl. of Andrew B. Isenberg ¶¶ 6-7 Ex. A, Docket No. 98; Transcript of Pl's September 2005 Disciplinary Hearing ("Hrg Tr") at 13-20, 63-65, Decl. of John J. Sullivan, Esq., Ex. C, Docket No. 100.) Plaintiff vehemently denies yelling, raising her voice, or using profanity, and asserts that others were ill-behaved toward her at that time. (Pl's Decl. ¶¶ 99-107.)  Plaintiff was suspended with pay four days later.  (Pl's Decl. ¶ 111; Isenberg Decl. ¶¶ 11-12 Ex. B.)

Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC") in April 2005 alleging that the unsatisfactory performance evaluation and suspension were in retaliation for her having filed the prior discrimination charge against LoRusso in 1990. (Decl. of Kathleen Kaczor, Esq. Ex. C, Docket No. 110.; Pl's Decl. ¶ 5 .)  That charge was amended in May 2005 to reflect the correct address for Defendant. (Pl's Decl. ¶¶ 6-7; Kaczor Decl. Ex. C.)

In June 2005, Plaintiff was given notice and specification of the charges against her, as required by the governing collective bargaining agreement. (Sullivan Decl. ¶ 4, Ex. A.) Specifically, Plaintiff was charged with inappropriate and insubordinate behavior based on her conduct on February 18, 2005; failure to properly update a "quarterly DMV scofflaw report;" failure to appropriately update a computer database; insubordination based on a

refusal to reschedule four weeks of criminal cases in May 2004; and violation of Defendant's internet usage policy from May 2004 to February 2005. (Sullivan Decl. ¶ 5, Ex. A.)  A hearing was held in September 2005 before a hearing officer from a different judicial district, at which Plaintiff was represented by counsel and both sides presented witnesses. (Id. ¶ 7-11, Ex. C.) The hearing officer sustained all charges with the exception of the allegation of direct subordination related to Plaintiff's failure to reschedule. (Id. Ex. F.) The hearing officer recommended that Plaintiff be terminated as a result. (Id. Ex. F at 19, Docket Nos. 106-7.)  This report and recommendation was then reviewed by the Honorable Jan H. Plumadore, Deputy Chief Administrative Judge for Courts Outside New York City and accepted on November 28, 2005.  (Isenberg Decl. Ex. C.)  Plaintiff was terminated from her position effective December 2, 2005. (Id.; Pl's Decl. ¶ 124.)

In January 2006, Plaintiff filed an additional EEOC charge alleging that she was improperly terminated in retaliation for her prior complaints of employment discrimination. (Kaczor Decl. Ex. D.)  The EEOC determined that there was insufficient evidence that a violation had occurred, and issued Plaintiff a right to sue letter on August 11, 2005. (Id. Ex. E.)  Plaintiff commenced the instant action in this Court on November 7, 2005.

### III. DISCUSSION

Summary judgment is appropriate, even in a discrimination case, "where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), *cert denied*, 540 U.S. 811 (2003). A court's function on a

summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." <u>Kaytor</u>, 609 F.3d at 545. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " <u>Weinstock</u>, 224 F.3d at 41 (quoting <u>Anderson</u>, 477 U.S. at 248).  Further, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003).

## A.     State Law Claims

Defendant correctly contends that Plaintiff's second and fourth causes of action, which allege violations of New York State Human Rights Law ("NYSHRL") based on gender discrimination, age discrimination,[1] and improper retaliation, must be dismissed for lack of subject matter jurisdiction.  (Def's Mem of Law at 3-4, Docket No. 112.)  "[A]s a general rule, state governments [and their agencies] may not be sued in federal court unless they have waived their Eleventh Amendment immunity" or there has been a valid abrogation of that immunity by Congress.  <u>Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.</u>, 466 F.3d 232, 236 (2d Cir.2006) (citing <u>Lapides v. Bd. of Regents</u>, 535 U.S. 613, 618-19, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002)); <u>see</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 99, 104 S. Ct. 900, 79 L. Ed. 67 (1984). Defendant is an administrative arm of the judicial branch of the New York state government, and it is therefore immune from

---

[1]Although Plaintiff's Second Amended Complaint raises an age discrimination claim only under state law, Defendant would also be immune from suit based on an alleged violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621 <u>et seq.</u>.  <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62, 92, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000) ("the ADEA does not validly abrogate the States' sovereign immunity").

suit in federal court for alleged violations of NYSHRL absent waiver.  Canales-Jacobs v. N.Y.S. Office of Court Admin., 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009); Jallow v. N.Y.S. Office of Court Admin., No 10 Civ. 8575, 2012 WL 4793871, *1 (S.D.N.Y., Oct 5, 2012). These causes of action are therefore dismissed.

**B.      Timely Exhaustion of Remedies**

Plaintiff's remaining two causes of action allege gender discrimination and improper retaliation in violation of Title VII.   Defendant argues that Plaintiff failed to exhaust administrative remedies with respect to the alleged gender discrimination.  (Def's Mem of Law at 4-8.)  Defendant further argues that Plaintiff's claim of a decades-long campaign of retaliatory harassment is not reasonably related to the specific limited allegations of retaliation contained in Plaintiff's EEOC claims, and therefore this claim is also not properly exhausted. (Id. at 8-11.)  Plaintiff responds that the conduct complained of in her complaint and subsequent amended complaints falls within the scope of the EEOC investigation, and therefore that conduct is reasonably related to the administrative charge.  (Pl's Mem of Law at 28-31.)

The failure to first present a claim to the EEOC or a state administrative agency may result in dismissal where the new claim is not reasonably related to the charge before the administrative agency.  See Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir.1993), *superseded by statute on other grounds as stated in*, Hawkins v. 1115 Legal Servs. Care, 163 F.3d 684, 693 (2d Cir.1998); Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 25-26 (2d Cir. 1985), *cert denied,* 474 U.S. 851 (1985); Ghadersohi v. Roswell Park Inst., No. 10-CV-143S, 2011 WL 4572539, *2-3 (W.D.N.Y.

Sept. 30, 2011); see generally McPherson v. New York City Dep't of Educ., 457 F.3d 211, 214 (2d Cir. 2006) (a right to sue letter enables a private suit only where issued in connection with a timely administrative charge); Francis v. City of New York, 235 F.3d 763, 767-68 (2d Cir. 2000) (exhaustion requirement is not jurisdictional, but subject to waiver, estoppel and equitable tolling).  The recognized exceptions to the exhaustion requirement include a previously unraised claim that falls within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" a charge of retaliation for the filing of the EEOC complaint; and "incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Murray v. Bd. of Educ. of City of New York, 984 F. Supp. 169, 175-76 (S.D.N.Y. 1997) (quoting Butts, 990 F.2d at 1403).

Plaintiff's first relevant EEOC complaint was filed in April 2005 and amended in May of that year.  (Compl., Docket No. 1 at 8-9; Kaczor Decl. Ex C.)  As amended, the EEOC charge alleges:

On about 1990 I filed a charge of discrimination . . . with the New York State Division of Human Rights (NYSDHR).  I protested employment practices prohibited by employment discrimination statutes.  The case was settled in 1997.

On about February 18, 2005, I received an unsatisfactory performance evaluation that I disputed because it was bogus and based on lies.  All my evaluations prior were satisfactory.  The individual who evaluated me most recently is a friend of Judge LoRusso, whom I complained about in the charge of discrimination I filed in the past.  On about February 22, 2005 I was suspended for no reason.  Ms Delmont has a personal [and] professional relationship with LoRusso's friend, Judge Frank Sedita [and] his nephew Jos[eph] Sedita, Esq. who also represented LoRusso . . . and lost in his removal during the State Comm. on Judicial Cond[uct] trial.

I believe that I received an unsatisfactory performance evaluation and was suspended because of my age [56] . . . [i]n willful violation of [t]he Age

7

Discrimination in Employment Act and gender, Female, in willful violation of Title VII of the Civil Rights Act, as amended.  I further believe that the poor evaluation and suspension were in retaliation for having filed a prior NYSDHR charge complaining about employment discrimination, in willful violation of Title VII of the Civil Rights Act.

(Kaczor Decl. Ex. C; see Pl's Decl. ¶¶ 5-6, 64.)  Plaintiff filed a second EEOC charge in January 2006 alleging that she was discharged on December 2, 2005 in retaliation for filing "a prior EEOC charge[] complaining about employment discrimination in willful violation of Title VII of the Civil Rights Act of 1964, as amended and the Age Discrimination in Employment Act, as amended." (Kaczor Decl. Ex. D.)

Initially, Defendant correctly argues that the cursory references to gender and age in these charges, unsupported by any factual detail, are insufficient to satisfy the exhaustion requirement. "While precise pleading is not required for purposes of exhaustion, a complete absence of specificity defeats a plaintiff's subsequent claims." Abram v. City of Buffalo, No. 04-CV-441S, 2011 WL 334297, *6 (citing Deravin v. Kerik, 335 F.3d 195, 202 (2d Cir.2003)); DiProjetto v. Morris Protective Serv., 489 F. Supp. 2d 305, 308–9 (W.D.N.Y. 2007) (absent related factual allegations, merely checking a box on a form discrimination complaint is not sufficient to state a plausible claim under Title VII or the ADA), aff'd, 306 Fed. Appx. 687 (2d Cir. 2009).  "Were [the courts] to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated." Butts, 990 F.2d at 1403 (allegation that plaintiff had been the consistent target of discriminatory practices and treatment from October 1987 to present too vague to serve as predicate for allegations in the complaint);

8

see Samborski v. West Valley Nuclear Servs. Co., No. 99-CV-213E, 2002 WL 1477610, *4 (W.D.N.Y. 2002) (allegations of "sexual harassment" that created a "hostile environment" are boilerplate terms that fail to inform the EEOC of any specific instances of harassment); Murray, 984 F. Supp. at 176 (mere reference to a denial of promotional opportunities based on race and sex insufficient to satisfy exhaustion requirement). Thus, any gender discrimination claims are also dismissed due to her failure to exhaust administrative remedies.

Remaining is Plaintiff's third cause of action for retaliatory harassment. The May 2005 amended EEOC charge references a February 2005 retaliatory unfavorable performance review and related suspension, and the December 2005 retaliatory termination. Plaintiff's federal complaint, however, is far more expansive in its allegations. In her Second Amended Complaint, Plaintiff alleges, among other things, that she was passed over for promotion in 1999 and again in 2003 in favor of younger, less qualified candidates in retaliation for her earlier complaints against Judge LoRusso (¶¶ 30-51). It is further alleged that Defendant's employees engaged in a retaliatory campaign against Plaintiff between January 2004 and March 2005 "in retaliation for her efforts to oppose illegal discrimination from 1990 to 2005." (Sec. Am. Compl. ¶¶ 54-70.)

Notably, all of the additional specific instances of misconduct that Plaintiff now argues are reasonably related to the claims in her EEOC charges occurred prior to the filing of those charges in 2005 and 2006. As recognized in Butts, a district court may "hear Title VII claims that either are included in an EEOC charge or are based on *conduct subsequent to the EEOC charge* which is 'reasonably related' to that alleged in the EEOC charge." 990 F.2d at 1401 (emphasis added); see Alfano v. Costello, 294 F.3d 365, 381

9

(2d Cir. 2002) (same).    Thus, "a 'reasonably related' claim applies only to alleged discriminatory conduct that occurred after the EEOC charge is filed." Townsend v. Exhange Ins. Co., 196 F. Supp. 2d 300, 313 (W.D.N.Y. 2002); Lester v. M&M Knopf Auto Parts, No. 04-CV-850S, 2006 WL 2806465, *7 (W.D.N.Y. Sept. 28, 2006) (additional discriminatory layoff claims dismissed as unexhausted because they predated, but were not included in, plaintiff's EEOC charge); Samimy v. Cornell Univ., 961 F. Supp. 489, 493-94 (W.D.N.Y. 1997) (similar).   "It was [Plaintiff's] duty to include all relevant alleged discriminatory conduct when [s]he filed the EEOC charge." Townsend, 196 F. Supp. 2d at 313.

Moreover, a common sense reading of Plaintiff's EEOC charges limits her allegations to the three specific acts of retaliation alleged: the unsatisfactory performance evaluation on February 18, 2005, the related suspension on February 22, 2005, and her termination on or about December 2, 2005.  (Kaczor Decl. Ex. C, D.) "Given the specificity of the charge[s], a reasonable EEOC investigation would begin and end with this review." Samimy, 961 F. Supp at 492 (court declined to interpret EEOC charge of discrimination in a single 1992 performance review to be reasonably related to additional or continuing alleged acts of discrimination).  Plaintiff's EEOC charges of three discrete incidents cannot "reasonably be expected to blossom into an investigation covering allegations of unrelated misconduct . . . dating back several years." Mathirampuzha v. Potter, 548 F.3d 70, 76 (2d Cir. 2008).

Finally, the majority of Plaintiff's additional claims are untimely. To be timely, an EEOC complaint must "be filed ... within 300 days of the alleged discriminatory act." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir.2010); see 42 U.S.C. § 2000e–5(e)(1) (Title VII); Clarke v. Roslyn Union Sch. Dist., No. 11-CV-2957, 2012 WL

2916759, *5 (E.D.N.Y. July 17, 2012).  Thus, even if Plaintiff's EEOC complaint had been more detailed, those claims based on conduct occurring more than 300 days prior to April 21, 2005 would still be barred.

## C.     Merits of Plaintiff's Retaliation Claims

Remaining before this Court is Plaintiff's third cause of action alleging retaliation in violation of Title VII, specifically the claims related to the unsatisfactory performance evaluation on February 18, 2005, the suspension on February 22, 2005, and her termination on or about December 2, 2005.

Title VII makes it unlawful for an employer to discriminate against an employee "because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  Retaliation claims are subject to the burden-shifting analysis of McDonnell Douglas Corp. v. Green.  411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 668 (1973); see Kaytor, 609 F.3d at 552. Plaintiff must first establish a prima facie case by showing that (1) she participated in an activity protected by Title VII; (2) her participation was known to Defendant; (3) Defendant thereafter subjected Plaintiff to a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  Kaytor, 609 F.3d at 552.  Although this initial burden is minimal, Plaintiff must nonetheless "offer[] evidence adequate to 'raise[ ] an inference of discrimination.' " Meiri v. Dacon, 759 F.2d 989, 996 (2d Cir. 1985) (quoting Furnco Const. Corp. v. Waters, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978)), cert denied, 474 U.S. 829 (1985); see Gordon v. New York City Bd. of Educ.,

232 F.3d 111, 116 (2d Cir. 2000) (whether plaintiff meets minimal burden is a initial question for the court, not the jury). An adverse employment action alone is insufficient to raise such an inference. "[A]n employer may fire an employee for a good reason, bad reason, a reason based on erroneous facts, or no reason at all, so long as its action is not based on a discriminatory reason." <u>Valentine v. Standard & Poor's</u>, 50 F. Supp. 2d 262, 290 (S.D.N.Y. 1999), *aff'd*, 205 F3d 1327 (2d Cir. 2000).

Plaintiff contends that on February 18, 2005 she was given an unsatisfactory performance evaluation based on false documentation created by her supervisor Kim Delmont, and that she was improperly suspended less than a week later as a result. (Sec. Am. Compl. ¶¶ 48,59-63; Pl's Decl. ¶¶ 94, 111.) Plaintiff alleges that "Delmont was a protégé of Judge Frank Sedita, who was a close friend of former Judge Lo Russo, and the uncle of Joseph Sedita, who represented former Judge LoRusso before the Judicial Conduct Commission." (Sec. Am. Compl. ¶¶ 50-51, Pl's Decl. ¶ 64.) Because of this, Delmont allegedly engaged in a campaign to isolate, discredit, and ultimately terminate Plaintiff "all in retaliation for Plaintiff's complaints against former Judge Lo Russo." (Sec. Am. Compl. ¶¶ 50-51, Pl's Decl. ¶ 66.) In her declaration, Plaintiff asserts that she filed "several complaints of gender bias" with Defendant's Gender Bias Committee between 1997 and 2002 "regarding harassing treatment [she] was receiving relative to former Judge LoRusso." (Pl's Decl. ¶¶ 33, 50-51, 55-57.) The most recent complaints are a March 2004 discrimination claim filed with Defendant's Inspector General and an April 2004 grievance, both of which similarly alleged that Delmont was engaging in hostile and discriminatory tactics in retaliation for the LoRusso case. (Pl's Decl. ¶¶ 80, 86, Exs G, H.)

Defendant correctly argues that Plaintiff failed to establish a prima facie case

12

because there is insufficient evidence to raise an inference of retaliatory intent behind the evaluation, suspension, or termination.   Proof that an adverse employment action was caused by a retaliatory animus may be demonstrated either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct, or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon, 232 F.3d at 117.

Initially, there is no direct evidence sufficient to raise an inference of retaliatory animus.  Plaintiff generally asserts that Delmont has "brought up [her] past problems with Anthony P. LoRusso." (Pl's Decl ¶¶ 83, 86 Ex G.) In the absence of more specific factual allegations, however, there is "no direct evidence of a retaliatory motive for [Plaintiff's] termination aside from her own conclusory allegations, which are plainly insufficient to defeat [Defendant's] motion for summary judgment." Woods v. Enlarged City School Dist. of Newburgh, 473 F. Supp. 2d 498, 528 (S.D.N.Y. 2007), aff'd, 288 Fed App'x 757 (2d Cir. 2008).   Notably, the February 2005 evaluation was prepared by Chief Clerk Sharon Thomas, albeit after discussion with Delmont.  (Decl of Marie Villari ¶ 19 Ex I; Hrg. Tr. at 37.)  Plaintiff even referenced the evaluation at her disciplinary hearing, testifying that "Sharon conducted it, not Kim [Delmont]." (Hrg. Tr. at 151, 334).) Further, in addition to being Deputy Chief Delmont's supervisor, Thomas also was a witness against LoRusso in 1990. (Thomas Decl. ¶¶ 4, 14-15; Pl's Decl ¶ 26, Pl's Dep. at 77-78, 80, Docket No. 116-2.)

The February 2005 evaluation and subsequent suspension are also too attenuated from Plaintiff's last reported grievance to raise an inference of retaliatory intent.   By her

own admission, Plaintiff's last grievance claiming that Delmont engaged in discriminatory conduct was filed in April 2004, almost a year prior to the unfavorable evaluation she now claims was retaliatory.  (Pl's Decl ¶ 80 Ex G.)  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001).  Instead, the permissible inferences that may be drawn from temporal proximity, or the lack thereof, should be considered in the context of the particular case. Espinal v. Goord., 558 F.3d 119, 129 (2d Cir. 2009); compare Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir.1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's EEOC complaint, was in response to the plaintiff's protected activity) with Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir.1980) (evidence of retaliatory animus found where defendant's failure to refer plaintiff substantial work occurred the first time plaintiff became available for work eight months after EEOC complaint).  An inference of causation may be defeated "(1) if the allegedly retaliatory discharge took place at a temporal remove from the protected activity; or (2) if there was an intervening causal event that occurred between the protected activity and the allegedly retaliatory discharge." Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005).

Here, not only was the alleged retaliatory action taken one year after Plaintiff's last complaint of discrimination, but it occurred approximately fifteen years after Plaintiff's participation in the Title VII proceeding that Plaintiff asserts is the cause of Defendant's retaliatory animus, and approximately eight years after the settlement of her related federal

14

discrimination action. (Pl's Decl. ¶¶ 24-25, 30-31.) <u>See</u> <u>Clark County School Dist. v.</u> <u>Breeden</u>, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (recognizing that a prima facie case of retaliation based on mere temporal proximity requires that this proximity be very close); <u>Yarde</u>, 360 F. Supp. 2d at 562 (where retaliatory animus is based solely on temporal proximity, three months is "the outer edge" of permissible inference of causation, and six months between protected activity and discharge "is well beyond the time for inferring retaliatory causation"). The parties agree that the February 2005 evaluation was the first negative review Plaintiff received during this fifteen year time span and, as noted, was given by a fellow witness in that initial sexual harassment proceeding. <u>See</u> <u>Ebanks v. Neiman Marcus Group, Inc.</u>, 414 F. Supp. 2d 320, 332-33 (S.D.N.Y. 2006) (no evidence to support retaliation claim where plaintiff was consistently given positive reviews after her engagement in protected activity).  As such, Plaintiff has failed to meet even the initial *de minimus* burden of establishing a prima facie case of causation. <u>See</u> <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 134 (2d Cir. 2000), *cert denied*, 530 U.S. 1261 (2000)(describing a plaintiff's initial burden as minimal). The same conclusion must also be reached with respect to Plaintiff's related suspension, which this Court finds inextricably intertwined with the evaluation four days prior.

Similarly, Plaintiff's termination occurred six months after Plaintiff's amended May 2005 EEOC charge.  In addition to being temporally and factually attenuated from Plaintiff's asserted basis for Defendant's alleged retaliatory animus, the LoRusso case, Plaintiff does not allege any additional conduct by Defendant's employees during those six months that would tend to support a finding of discrimination or retaliation. <u>See</u> <u>Yarde</u>, 360 F. Supp. 2d at 562 (six months between protected activity and discharge "is well beyond the time for

inferring retaliatory causation" absent further factual support).   Further, Plaintiff's termination was the result of conduct that, although disputed, allegedly occurred prior to that EEOC charge, and the termination  was not effected until after she was afforded a full evidentiary hearing where she was represented by counsel. Thus, after consideration of the circumstances of this particular case, see Espinal, 558 F.3d at 129, the Court finds that Plaintiff failed to establish a prima facie case of retaliatory animus with respect to her unsatisfactory evaluation, suspension, or termination.

## IV.  CONCLUSION

Plaintiff's claims of gender and age discrimination must be dismissed for lack of subject matter jurisdiction, failure to exhaust administrative remedies, and untimeliness. Plaintiff failed to establish a prima facie case with respect to the remaining claims of retaliation, therefore Defendant's motion for summary judgment is granted in its entirety.

## V.  ORDERS

IT HEREBY IS ORDERED that Defendant's Motion for Summary Judgment (Docket No. 96) is GRANTED in its entirety and the Second Amended Complaint is dismissed;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.


Dated:  April 21, 2013
          Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court

16